UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LARRY GRIGGERS, | ) | |
| RC MANAGEMENT HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03410-JMS-DML |
| | ) | |
| JUDITH A. SHOPF, | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

This case involves the sale of Plaintiff Larry Griggers' ownership interests in several Ruth's Chris restaurants to co-Plaintiff RC Management Holdings, LLC ("RC Management"). After Mr. Griggers and RC Management provided Defendant Judith Shopf an opportunity to exercise her rights of first refusal, they brought this suit for declaratory judgment. [Filing No. 12.] Presently pending before the Court is Ms. Shopf's Motion to Dismiss, in which she alleges that this Court lacks subject matter jurisdiction over this matter. [Filing No. 63.] Ms. Shopf's Motion is fully briefed[1] and is now ripe for the Court's review.

After filing her Motion to Dismiss, Ms. Shopf died in August 2018. Plaintiffs now seek an order substituting her heirs as defendants in this matter. As such, the Court will also consider Plaintiffs' Motion to Substitute Party Defendant. [Filing No. 83.]

---

[1] For the second time during the pendency of this case, Ms. Shopf filed two identical briefs in support of her Motion. [Filing No. 63-1; Filing No. 64.] Consistent with Local Rule 7-1, the Court will consider the Brief that was filed separately – Filing No. 64 – as the operative brief in support of Ms. Shopf's Motion to Dismiss. Counsel should take care not to file repetitive documents in the future, and to comply with local rules.

For the reasons stated herein, the Court **GRANTS** both Plaintiffs' Motion to Substitute Party Defendant and Ms. Shopf's Motion to Dismiss.

## I.
### APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Jurisdiction is the "power to decide," and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary. *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The burden is on the party bringing the claim to demonstrate that subject matter jurisdiction exists. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

"Motions to dismiss under 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). "In the context of a motion to dismiss for lack of subject matter jurisdiction, we accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002). In considering such a motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citations omitted).

## II.
### BACKGROUND

Ms. Shopf's Motion comes before this Court seven months after the Court denied her previous Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) in March 2018. [Filing No.

46.] In that Order, [Filing No. 46], the Court set forth the allegations contained in Plaintiffs' Amended Complaint, [Filing No. 10], and those allegations remain unchanged. As such, the Court incorporates by reference the background of its March 2018 Order, [Filing No. 46 at 4-9], and presents the following abbreviated summary of the facts.

Since 1994, Larry Griggers has been Chairman and CEO of various Ruth's Chris entities in Indiana and Missouri, (collectively, "the Ruth's Chris entities"). [Filing No. 10 at 2.] Mr. Griggers' transfer of ownership and management of the Ruth's Chris entities was subject to a right of first refusal by other shareholders and unitholders of the Ruth's Chris entities. [Filing No. 10 at 3.]

Judith Shopf, the widow of Mr. Griggers' former business partner, is a successor in interest to her late husband's ownership interest in the Ruth's Chris entities. [Filing No. 10 at 2-3.]

In August 2017, after a member of RC Management made an offer to purchase Mr. Griggers' ownership interests in the Ruth's Chris entities, Ms. Shopf was provided with notice of the proposed transfer, along with the rest of the shareholders and eligible unitholders of each entity. [Filing No. 10 at 3-5.] In a letter dated September 11, 2017, Ms. Shopf's attorney challenged the transfer, arguing that a "bundled" sale was not permissible, the purchase price was unreasonably high, and the transaction violated the Ruth's Chris entities' governing documents. [Filing No. 10 at 7.] In response, Mr. Griggers extended the time for Ms. Shopf to exercise a right of first refusal. [Filing No. 10 at 7.]

Notwithstanding Ms. Shopf's dispute concerning the proposed transaction, Mr. Griggers and RC Management closed on the transaction and signed an agreement (the "Provisional Agreement") to honor Ms. Shopf's right of first refusal through October 13, 2017. [Filing No. 10 at 9; Filing No. 10-5 at 1-3.]

3

On October 6, 2017, Mr. Griggers and RC Management filed suit in this Court against Ms. Shopf, requesting declaratory judgment on seven grounds relating to the transaction and Ms. Shopf's rights. [Filing No. 10 at 10-11.]

One week later, Ms. Shopf filed suit in Louisiana state court (the "Louisiana Suit") against Mr. Griggers, RC Management, and several others seeking a preliminary injunction and temporary restraining order prohibiting the proposed transfer. [Filing No. 17-1 at 7.] The Louisiana Suit was removed to the United States District Court for the Eastern District of Louisiana and was dismissed without prejudice. *See Shopf v. Griggers*, No. 2:17-cv-10958 (E.D. La. Oct. 20, 2017), ECF No. 1; EFC No. 27; EFC No. 45.

On July 9, 2018, Ms. Shopf filed the instant Motion to Dismiss for lack of subject matter jurisdiction. [Filing No. 63.] On August 9, 2018, counsel informed the Court that Ms. Shopf had died on August 4, 2018. [Filing No. 75.] On November 2, 2018, Plaintiffs filed a Motion to Substitute Party Defendant, seeking an order substituting Leslie Shopf and William Helfand, in their capacities as the duly appointed personal representatives of Ms. Shopf's estate. [Filing No. 83.]

### III.
#### DISCUSSION

*1. Plaintiffs' Motion to Substitute Party Defendant [Filing No. 83]*

The Court first turns to Plaintiffs' Motion to Substitute Party Defendant, in which they argue that Ms. Shopf's heirs should be substituted as defendants in this matter. [Filing No. 83.] Plaintiffs argue that "in accordance with [Ms.] Shopf's will, Leslie Shopf and William Helfand were appointed and confirmed the Independent Testamentary Co-Executors of the Succession of Judith Anderson Shopf." [Filing No. 83]. In support of their Motion, Plaintiffs include a document

4

from the Twenty-Second Judicial District Court for the Parish of St. Tammany in Louisiana naming Leslie Shopf and William Helfand as co-executors of Ms. Shopf's will. [Filing No. 83-1.]

Rule 25(a)(1) of the Federal Rules of Civil Procedure provide that if "a party dies and the claim is not extinguished, the court may order substitution of the proper party," and that a motion for substitution "may be made by any party . . . within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). "[T]he proper party for substitution is the person who has the legal right and authority to defend against the claims brought against the deceased party and Rule 25(a) recognizes that the proper party usually will be the representative of the decedent's estate who has been appointed under state law." *Hicks v. Young, No. 10 C 3874*, 2012 WL 1755735, at *1 (N.D. Ill. May 15, 2012) (citation and quotations omitted).

Although the timeline for Ms. Shopf to file a response has not yet lapsed, the Court may rule upon a routine or uncontested motion before the response deadline passes" pursuant to Local Rule 7-1(d) unless the motion indicates that an opposing party objects to it or the court otherwise believes that a response will be filed. In this case, the Court finds Plaintiffs' Motion is sufficiently routine that a decision at this time is permitted under the Local Rules. In addition, the Court finds that Leslie Shopf and William Helfand, in their capacities as personal representatives of the Estate of Ms. Shopf, are proper parties for substitution under Rule 25(a)(1). Accordingly, Plaintiffs' Motion to Substitute Party Defendant is **GRANTED**.

All subsequent references to Ms. Shopf should be read to refer to the substituted parties. In the interests of clarity, however, given that Ms. Shopf filed the pending Motion to Dismiss prior to her death, the Court will continue to refer to arguments proffered by her attorneys as having been made by her.

### 2. Ms. Shopf's Motion to Dismiss [Filing No. 63]

The Court next turns to Ms. Shopf's Motion to Dismiss, in which she argues that this Court lacks subject matter jurisdiction because "there is no longer a legal basis" to "declare any rights under the governing documents or applicable law" because her rights of first refusal have expired. [Filing No. 64 at 2.] Ms. Shopf argues that this case "does not involve a *bona fide* necessity" for Plaintiffs to carry on their business because the sale of the stock from Mr. Griggers to RC Management has already closed, so Plaintiffs "have already undertaken their desired course of conduct that is the subject of their suit." [Filing No. 64 at 6.] She admits that her rights of first refusal have now expired and states that she "chose not to continue fighting over potential problems related to [P]laintiffs' sale between themselves and therefore neither appealed that dismissal nor re-filed her claims in any court." [Filing No. 64 at 2.] Ms. Shopf argues that Plaintiffs "are not waiting for this court to declare any rights or duties before seizing a business opportunity." [Filing No. 64 at 6.] As such, she contends that "any judgment in this case would be merely an (improper) advisory opinion." [Filing No. 64 at 7.]

In response, Plaintiffs argue that there "is no reason for the Court to retreat from its March 2018 conclusion that a case or controversy exists between the parties." [Filing No. 79 at 6.] Plaintiffs characterize Ms. Shopf's Motion as attacking "the Court's subject matter jurisdiction on the grounds that no case or controversy among the parties exists, principally because she never filed counterclaims in this action," and state that she "hangs her hat on the fact that her Louisiana district court case has been dismissed and she has not filed a counterclaim in this case." [Filing No. 79 at 4; Filing No. 79 at 12.] Plaintiffs argue that Ms. Shopf "cannot seriously contend that no controversy exists" when her answer to the Complaint "preserves the same disputes that she: (a) threatened in pre-suit communications, (b) pursued (inappropriately) to obtain a temporary

6

restraining order without notice in Louisiana state court, (c) pursued in Louisiana federal court; (d) advanced in Louisiana through a motion to reconsider even after her case was dismissed; and (e) has argued in her pleadings and court submissions in this Indiana case." [Filing No. 79 at 8.] Plaintiffs contend that Ms. Shopf "cannot unring the bell that she is willing to pursue a claim related to the sale of shares/units of the" Ruth's Chris entities, "particularly when her conduct, history, and operative pleadings still demonstrate an actual controversy." [Filing No. 79 at 10.] Plaintiffs contend that dismissing their complaint on mootness grounds would force them "to 'wait and see' if [Ms.] Shopf makes good on her threats to file a lawsuit (again) in which she may resurrect her previously-pleaded claims that Plaintiffs breached their fiduciary duties and contracts." [Filing No. 79 at 12.]

In her reply brief, Ms. Shopf argues that this case is distinguishable from those in which the Declaratory Judgment Act is properly invoked because (1) Plaintiffs in this case "did not refrain from exercising what they believed to be their rights under the shareholder/unitholder agreements at issue because of a fear or risk of a lawsuit," (2) they "are not incurring some loss or damage while waiting for [Ms.] Shopf (or some other shareholder/unitholder) to decide whether to file suit," and (3) "the statute of limitations is already running for any claim that [Ms.] Shopf or any shareholder or unitholder might have." [Filing No. 82 at 4-5.] Therefore, Ms. Shopf argues that there "is no purpose served by, and no *bona fide* business necessity for, a declaration." [Filing No. 82 at 5.] In addition, Ms. Shopf argues that Plaintiffs have not added the other shareholders to the case and, without them, no certainty can be gained. [Filing No. 82 at 5.] In addition, Ms. Shopf contends that under Plaintiffs' theory, "the only decision this Court could render that would eliminate this 'uncertainty' is a declaration of no breach of fiduciary duty and no breach of

contract," – in other words, the "outcome the Plaintiffs seek and desire is not a declaration of rights or status, but rather a finding on liability or non-liability." [Filing No. 82 at 6-8.]

"Under Article III, § 2 of the United States Constitution, federal court jurisdiction is limited to 'actual, ongoing controversies.'" *St. John's*, 502 F.3d at 626 (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "In the absence of a live controversy," a court order would be "no more than an advisory opinion," which, "federal courts are without constitutional authority to issue." *Id.* at 627.

Even where a case or controversy originally existed, mootness can "strip[] a federal court of subject-matter jurisdiction." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 815 (7th Cir. 2018) (citations omitted). "A case becomes moot when the dispute between the parties no longer rages, or when one of the parties loses his [or her] personal interest in the outcome of the suit." *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007) (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994)). In other words, "[i]f 'an event occurs while a case is pending . . . that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party, the [case] must be dismissed.'" *Chicago Joe's* 894 F.3d at 815 (quoting *Cornucopia Institute v. USDA*, 560 F.3d 673, 676 (7th Cir. 2009); *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992)).

This case has the added complexity of being a suit for declaratory relief in which Plaintiffs seek seven declarations regarding (1) the sale transaction between Plaintiffs and (2) Ms. Shopf's rights vis-à-vis the sale transaction. [Filing No. 10 at 10-11 (setting forth the seven subparts upon which Plaintiffs seek a declaratory judgment).] Therefore, the Court must look to jurisdictional principles in the declaratory judgment context.

The Declaratory Judgment Act itself provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought."
*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).
"This statute, however, does not dispense with the Article III case or controversy requirement . . ., nor does it supply the court with subject matter jurisdiction." *Matter of VMS Sec. Litig.*, 103 F.3d 1317, 1327 (7th Cir. 1996) (citations omitted), overruled on other grounds by *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010); *see also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 627 (7th Cir. 1995) (holding that the jurisdictional requirement of the Declaratory Judgment Act "tracks the 'cases' or 'controversies' requirement of [A]rticle III"). The distinction between "declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not" is whether the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests" and whether it is "real and substantial" as distinguished "from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (citations and quotations omitted). This difference "is necessarily one of degree, and it would be difficult if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (noting that "the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). An exception exists, wherein the party seeking declaratory relief demonstrates that there is an "ongoing policy" that "is a continuing and brooding presence that casts a substantial adverse effect on the interests of the petitioning parties," but such an exception "rarely" applies. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 861 (7th Cir. 2018) (citations and quotations omitted).

Two developments have occurred since this Court considered Ms. Shopf's first Motion to Dismiss in March 2018, both of which impact this Court's analysis of whether the issues in this case are moot and support a conclusion that Ms. Shopf cannot bring a claim related to the sale between Plaintiffs at this time.

First, Ms. Shopf did not appeal the decision of the U.S. District Court in Louisiana dismissing her case without prejudice. She filed a Motion for Reconsideration, which the court in Louisiana denied on March 23, 2018. *Shopf v. Griggers*, 2018 WL 1453214, at *3 (E.D. La. Mar. 23, 2018). Thereafter, Ms. Shopf had 30 days after the entry of judgment to file her notice of appeal. *See* Federal Rule of Appellate Procedure for the 5th Circuit 4(a)(1)(A); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) (analyzing and affirming a district court's dismissal of an action without prejudice for lack of personal jurisdiction). Therefore, at the time this Court issued its prior order regarding jurisdiction on March 27, 2018, the timeline for Ms. Shopf to appeal the decision of the Louisiana court had not yet lapsed and she still had approximately 26 days in which to file her notice of appeal. However, Ms. Shopf did not appeal the decision of the Louisiana court.

A few weeks later on April 10, 2018, Ms. Shopf filed an answer to Plaintiffs' Complaint in this case in which she failed to raise a counterclaim. [Filing No. 49.] Rule 13(a) of the Federal Rules of Civil Procedure provides that a pleading:

> must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

"Courts generally have agreed that the words 'transaction or occurrence' should be interpreted liberally in order to . . . carry out the philosophy of Rule 13(a)" which is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common

10

matters." *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 396 (7th Cir. 1986) (quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977)). Rule 13(a) "is in some ways a harsh rule," in that it "forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them." *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir. 1979). The failure to include compulsory counterclaims in a suit "means that they are thereafter barred." *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007); *see also Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 917 (7th Cir. 2008) ("All Rule 13(a) does is command that certain claims be pleaded as counterclaims. It does not specify the consequences of failing to do so. Those consequences are given by the doctrine of res judicata, including its exceptions"). In short, as a result of her failure to plead a compulsory counterclaim, Ms. Shopf would be subsequently barred from bringing an independent action on this claim.

Plaintiffs contend that there "is no reason for the Court to retreat from its March 2018 conclusion that a case or controversy exists between the parties." [Filing No. 79 at 6.] But Plaintiffs' argument ignores the events that have occurred in this case in the intervening months. In March, when Ms. Shopf appeared poised to possibly assert her appeal rights in Louisiana and had not yet filed her answer in this case, the Court was persuaded by Plaintiffs' argument that there was "uncertainty surrounding the legality of the transfer and how such uncertainty would affect the Ruth's Chris entities' ongoing business, their employees, the Franchisor, and other investors." [Filing No. 50 at 19.] By contrast, Ms. Shopf's decision not to appeal the decision in the Louisiana Case and her decision not to assert a counterclaim in this case has significantly weakened the argument that there is a sufficiently immediate and substantial controversy between the parties to warrant the issuance of a declaratory judgment. *Golden*, 394 U.S. at 108. Whereas the dispute

11

between the parties was significantly more immediate and substantial in March 2018, the passage of over seven months with no action by Ms. Shopf to pursue her claim, shows that "the dispute between the parties no longer rages" as it once did. *Thomas*, 244 F. App'x at 743. Put simply, Ms. Shopf's failure to appeal the Louisiana Case or assert a counterclaim in this case supports a conclusion that there is no case or controversy in this matter. And if there is no case or controversy, then this Court must dismiss Plaintiffs' claims for lack of jurisdiction.

It is true that the procedural nuances surrounding a compulsory counterclaim in this context are complicated. "A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (emphasis in original, quoting *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004)). Therefore, any dismissal by this court would be without prejudice. However, this Circuit has typically held that "dismissal without prejudice has, by definition, no preclusive effect" for the purposes of res judicata or collateral estoppel. *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 566 (7th Cir. 1986). This would suggest that if this Court dismisses Plaintiffs' claim for lack of jurisdiction, Ms. Shopf's failure to plead a counterclaim under Rule 13(a) would lack the necessary preclusive effect to bar her from bringing her claim again – in effect, the right to assert her claim, which she currently lacks, would be restored. Such a confounding outcome is antithetical to the spirit and intent of Rule 13. *See Martino*, 598 F.2d at 1082 (stating that under Rule 13, the "convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy" and that the filing of the answer in a case marks "a point at which the judicial burden of the earlier lawsuit outweighs the opposing party's interest in bringing an action when and where it is most convenient").

Digging further into the nuances of Rule 13, however, reveals that a final judgment on the merits is not always required to bar a claim that should have been pled as a compulsory counterclaim. As an initial observation, the Court notes that collateral estoppel provides a "good deal more latitude" on the requirement that there be a final judgment than does res judicata. *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir. 1995); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1417 (3d ed.) (noting that when determining the effect of failing to plead a counterclaim, "an analysis in terms of estoppel is a more flexible tool for handling cases resulting in a default judgment, a consent judgment, or a dismissal after a settlement agreement"). Courts outside of this Circuit have stated that the compulsory counterclaim rule is sometimes described in terms "of res judicata and sometimes on a theory of waiver or estoppel." *Carnation Co. v. T.U. Parks Const. Co.*, 816 F.2d 1099, 1103 (6th Cir. 1987). In 1988, the Seventh Circuit stated in dicta in *Hartford Acc. & Indem. Co. v. Sullivan* that the "forfeiture of a claim that should have been but was not raised as a compulsory counterclaim is based on principles of or akin to res judicata." 846 F.2d 377, 382 (7th Cir. 1988). In a subsequent case, however, the Seventh Circuit clarified that "if specific issues are resolved in the declaratory judgment action, their resolution will bind the plaintiff by virtue of the doctrine of collateral estoppel should he later seek an injunction or damages." *Allan,* 512 F.3d at 916. Therefore, in this case, the effect of the compulsory counterclaim rule would be based on estoppel rather than res judicata.

Further, several courts have held that a final judgment is not required to bar claims that were not raised as a compulsory counterclaim. The First Circuit, for example, stated that it was "not persuaded that a final judgment is a sine qua non to invocation of the bar" as "there is nothing in [Rule 13] limning the term 'judgment.'" *Dindo v. Whitney*, 451 F.2d 1, 3 (1st Cir. 1971). Therefore, the First Circuit found that where a party "knew of the existence of a right to

13

counterclaim, the fact that there was no final judgment on the merits should be immaterial, and a Rule 13(a) bar would be appropriate." *Id.* at 3. Similarly, in an opinion that was subsequently affirmed by the Sixth Circuit, the United States District Court for the Southern District of Ohio held that the "operation of Rule 13(A) does not depend on previously asserted counterclaims being fully adjudicated on their merits; it simply requires that all claims existing at the time the pleading is filed, and arising out of the same transaction or occurrence, be included in the first action or be forever barred." *McConnell v. Applied Performance Techs., Inc.*, 2002 WL 32882707, at *9 (S.D. Ohio Dec. 11, 2002), aff'd, 98 F. App'x 397 (6th Cir. 2004). Although the Seventh Circuit has been less far-reaching in its decisions, it has demonstrated some flexibility in applying the final judgment rule by holding that a district court's denial of a motion to dismiss can be sufficiently final for purposes of collateral estoppel. *Gilldorn*, 804 F.2d at 393.

As a result of the foregoing, the lack of a final judgment with prejudice in this matter does not mean that Ms. Shopf's right to bring a claim arising out of the transaction or occurrences that are the subject matter of Plaintiffs' request for declaratory judgment would be restored. If so then Plaintiffs already possess the protection they would seek via an advisory opinion under the compulsory counterclaim rule and pursuant to judicial estoppel.

However, even if this is not the case and such rights would be restored, Ms. Shopf is correct in pointing out that "the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002). Moreover, "the declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative." *Id.* at 712. The threat of suit in this case is no longer immediate and real. As such, the Court lacks

14

subject matter jurisdiction over this case and Ms. Shopf's Motion to Dismiss is **GRANTED**. [Filing No. 63.]

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Plaintiffs' Motion to Substitute Party Defendant, [83], and **GRANTS** Ms. Shopf's Motion to Dismiss, [63]. Plaintiffs' request for declaratory judgment is, therefore, **DISMISSED WITHOUT PREJUDICE**.

Final Judgment shall issue accordingly.

Date: 11/13/2018

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**